Thank you, Your Honor. First, let me apologize for not being able to appear there in person on the medical issue, which I'm dealing with as we speak, because I'm calling you from a nursing station, not a hospital. We're sorry to hear that. Would you please start the clock? Thank you. Thank you. I'd like to reserve four minutes if I may. That was the intent. All right. Thank you. Given that the court's law supposed to focus on the issue of jurisdiction in relation to the amount of controversy, I will essentially limit my remarks to that issue unless anyone has any questions. So the first question raised by that issue is, what is the amount sought if the officer is pleading? So there's no amount of controversy, except for in the pleading. Under those circumstances, the burden moves to the defendant to prove facts which support jurisdiction. Counsel, this is Judge Python. Could you help me on something here? Yes. Because I understand the issue in this case is basically who keeps the house rather than what happens to one or two or three payments on the mortgage. Is that right? Well, no. What it really means, what you think is an injunction of the home office to celebrate HHR, what you're really saying is not, I own the house, they don't. It is, I have the right to stay in this house and the bank does not have the right to sell it.  I'm sorry. That's what I meant. You didn't get around Garfinkel v. Wells Fargo Bank. Well, because that issue, we're not talking about the value of the house. The injunction isn't permanent until the loan modification is determined. That may happen in a day. Generally, under HHR, it's required to happen within 45 days. The amount of damages that issue, frankly, for either party under that scenario is minimal. If the bank has simply done more than such requires it to do, which is, with view to loan modification, there's no dispute, for example, if they had all the documents at hand to do so, they had comments, the statute requires it, that they make a determination within a reasonable period of time. Generally, that's about 45 days. With a scenario, the bank loses 45 days of a loan of several hundred thousand dollars. That would be in relation to the amount of controversy. The minimum. The bank, in this case, doesn't even attempt to argue the plaintiff would suffer damages anywhere close to 75,000. They make no effort to even claim he would suffer any damages. Instead, it argues that for the bank. Let me remind you of Garfinkel. It seems kind of analogous to me, and I'm wondering what the distinction is there. We said if the bank is allowed to proceed with a contemplated sale under the California non-traditional foreclosure procedure, the property will be sold. The whole purpose of this action is to foreclose the bank for selling this property in the manner contemplated. Based on these facts, the court has no difficulty finding that the manner in controversy has value in excess to at least $10,000, exclusive of interest and costs. I guess you're looking at the value of the property. At this point, what's the distinction? The distinction is this would not be a permanent bar on sale. It wouldn't be there either. I mean, if they got their, if they got to stay in their house and then they quit paying their mortgage, they can't foreclose them again. Well, that's correct. I may not be completely clear. There are two ways in which this could happen. One, the long-term basis is approved. They then begin to pay the new, the modified payment amount. If they fail to do so, the bank has then foreclosed. If they do so, the bank cannot foreclose. The only other possibility is the bank has the loan modification before it and chooses, for its own purposes, to simply never make a decision. The statute is clearly set up to make any bank with any sense of business at all to hurry up and make a decision because either decision ends the matter. Either ends the matter. So the only way the bank is suffering anything at all is when it simply sits on the loan modification and doesn't make a decision. Counsel, I have a different question. Sure. So I understand there's a split in the circuit matter, but I guess at least among the district courts, as to whether in this sort of situation where there's a temporary injunction, you're looking at the value of the loan modification and not the value of the outstanding amount of the loan. It has a more ample design. But the next question, though, is do we calculate the amount of controversy by including statutory damages in attorney's fees? Yes. But statutory damages aren't set. It simply says under H.O. 200, your actual damages, or this is counted in dollars, whichever is right there. So you have a base amount of 50, which doesn't fulfill the statute. Here you have, on the record on appeal, no evidence of any damage amount due to the appellant. You do have a baseline of 50, assuming damages of any kind can be shown. I think your second question is can attorney's fees be included? Well, generally attorney's fees are regarded as damages. But in this case, H.O.B.O.S. does submit the payment of some of the fees for successfully bringing or obtaining injunctions released. But that would be determined at the time of removal, not at the end of the day. So whatever fees were accrued at the time that the case was removed would be the measure. If you were to even include that, although that was not the basis that the district court found subject matter jurisdictions or found diversity jurisdictions. No, that's right. Except, of course, this was removed as soon as the complaint was filed. You would need, in the most bank-optimistic view possible, you'd have to say there's 50,000 damages under the statute available and somehow Mr. Grant spent $25,000 preparing a complaint. You'd also have to assume that somehow you could find a judge who would award you $25,000 for writing a complaint, which I think is, although I write law too well, I find that unlikely. I should add, though, just to understand this, if I was able to seek an injunction in the federal court, the federal court would be under an obligation to make a determination of what were the appropriate attorney fees for successfully winning injunctive relief. All right, counsel, if you'd like to save some time, and you're now down to about a minute, so I should be letting the opposing counsel argue, and then we'll give you a couple minutes. Sure. Thank you. Good morning, and may it please the court. My name is Tom Woods. I'm counsel for the Appaneys, and I'm joined at counsel's heel by my colleague Al Vu, the Appaneys Parsley Proposal Servicing and U.S. Bankers' Trustee for the Guam Mortgage Pass-Through Certificate Series 2006-2015 Trust. For ease of reference, I'd like to refer to Appaneys as SPS. Of course, I've come prepared today to speak with respect to everything that's in the record, but I, like Mr. Graham, am going to focus my comments and listen to what is directed to the issue that's been highlighted by the court having to do with whether the amount of controversy has been satisfied. The way that the order was written is with respect to Ms. Corral's request for an injunction or when viewed in the light of her request for damages and attorney's fees. So what I would like to do is comment on each of those. based on the value of the house and the amount of the loan. And the injunction here is distinguishable, I believe, from the injunction that was fought in Garfunkel. In Garfunkel, they were looking for a permanent injunction to foreclose the sale of the house. This is a provisional remedy to maintain the status quo that you can't proceed for a certain number of days with the sale of the house while you consider the loan modification application. It does not forestall you from going forward and selling the house should you decline the loan modification agreement. So isn't that distinguishable? When you're looking for temporary relief, it really isn't the value of a house that's the object of the litigation. The object of the litigation is to have you review their loan modification application, and not declare a title in the house to the plaintiffs. In the judgment's view, though, you're correct. There's a distinction, and Judge Wardlaw mentioned it earlier, among the districts as to whether you're viewing an injunction that's said to be limited in the complaint. And that is how Ms. Corral was under complaint. The difference in this case is that regardless of what was requested in the complaint, our case, unlike the cases that you mentioned, our case had a robust record in the Superior Court prior to the time that the case was removed. And the Superior Court's records were attached to SPS's notice of removal. And the point and the distinction that I'm making is, although the complaint refers to an injunction for the limited purpose of SPS to discriminate a loan modification application, the Superior Court judge said that the injunction was an injunction to prevent a sale of the property because Ms. Corral was not entitled under the Homeowners Bill of Rights to a determination on whatever it was that she alleged had been submitted to SPS. The reason for that is because the developed record that the case was removed on that we offered as preponderance of the evidence in support of our removal showed that on December 5th, 2014, Ms. Corral settled an earlier case. In that earlier case, she acknowledged that SPS would have, she would have 30 days to submit a loan modification application. At that point, SPS could initiate foreclosure. She didn't submit a loan modification application in 30 days despite what she knew. She didn't submit one in January. She didn't submit one in February. She submitted one. Right, but okay. She said she didn't have one. So she's saying that there's condition precedent here that it never met. No, she couldn't give you the application because you hadn't actually given her the current form. And isn't that what this case is about? It was a settlement agreement that you are going to wait 30 days, let her fill out this loan application, and consider it before you did anything else with regards to disposing of the property. You're in a dispute as to whether or not in that 30 days she was relieved from filing her loan application because she didn't get the labor work or she did. But the relief slot here is not, therefore, the house is ours. You acquired a title of this house in need because they violated this agreement. It's either some measure of damages for enbridging that contract or some measure of damages that you would sustain because you were delayed in being able to proceed. But it's not the value of the house because no one seeks the house at the end of the day. The plaintiff says this. Well, under, to address that, the complaint that was removed in non-alleged breach of contract alleged a violation of the homeowner's public rights. And under the homeowner's dual rights, especially under section 2923.6, a loan modification application does not need to be considered for determination unless the application is complete. Under section 2924.10, the loan servicer gets five business days or seven weekdays from the date the document is received in support of the loan modification to even determine whether or not the application is complete. You're supposed to submit a loan modification application two days before the sale. Ms. Corral was obviously able to do that because she did, although she contended that we need to give her the document, she was still able to do it. And on those facts, her request for preliminary information was denied. Counsel? Yes, ma'am. We've been talking about the loan modification form as though it's a bundle of papers and you have to get it from the bank. I had thought, and perhaps I was under the misimpression, that all it is is a form you can either drive by and set up at the bank and use it for one, or you can download it onto your own computer from the bank's website and print it out on your own printer. Am I mistaken, or am I correct in my understanding? Some of it is correct, and I believe Ms. Corral's company tries to get a recitation of all the documents. I'm trying not to lag great with argumentative stuff. We just want to find out what this thing is. It is very simple. It's easily available online. What is it, and where do you get it? You get it online? You can get it online. SDS isn't a bank where you go in and ask for a document and get it, but you can get it online. Ms. Chen noted that in his orders. Also, Ms. Corral had the application documents in her possession because the entire basis of it. It did file for a modification application, albeit more than the 30 days that the settlement gave her later than that. But what I'm trying to find out is what the thing is. Is it just three or four pages of forms or 10 or 20 pages of forms, and where do you get it? I think where we've come to is you download it from the servicer's website and print it out. Have I got that? Yes. What is the thing? Is it an application that's available online? I mean, is it, like, 20 pages of paper, or is it 17 different forms, or what is it? It depends on your financial circumstance because the form will request the information. If you're self-employed, you have to provide all those forms and documents. If you're not self-employed, you have to provide your W-2s. If you're willing to get rental income, you have to provide your rental agreements. So you go through the form and you check off, and at the end of the day, your application packet may be within the Xerox, your cash returns, your W-2s, or whatever it is, and you fax it in. And part of the problem is sometimes you swallow up information that's requested and that can be taken care of over the phone, but the documents are easily accessible and easy to follow I have a somewhat tangential and perhaps not relevant question, but I'm curious. Where are we now on this? She filled out the form. Was it denied? Is this case moved? Has this house been sold? The house has not been sold, to my knowledge, although it wasn't in front of Judge Chin on the removal issue. And I know that it hasn't been sold, and I think the clout is associated with this litigation result and it not having been sold. But I see that my time is running out. We're moving off of the either-be-employed rule, and it's on the loss, particularly at SPS. This complaint, temporary restraining order in TRO, was filed to stop the sale. The record was very clear that SPS had no obligation on short notice to review those documents before the sale. In other words, SPS didn't see them anything. This case is not about, it's not legitimately about SPS being sold. It seems all your deal was in the settlement. She has 30 days to file for a will of monetization, and she didn't consider either, correct? And your contention is that under the settlement agreement, 30 days is the relevant time period? For her to have submitted? Yes. And she eventually did submit, but it was a couple months after that. Is that right? Yes. And I'll be leaving for closure. All right. Thank you, counsel. Thank you very much. Thank you. I appreciate you all. You may put 32 minutes now on your clock. Thank you. Mr. Graham? Yes. Can I proceed? Thank you. Let me, we never actually, although that, the appellees began their argument by saying, let's deal with the amount of controversy. We got away from that almost instantly. So let me answer a couple of the questions that were raised by one, a couple of the questions you asked and one you responded to. The RMA is a specific document which is provided by the bank to a homeowner, which has to be prepared. This is correct. It can be several hundred pages. The application itself changes regularly. The banks do not consider an RMA complete. If the RMA has changed, then applicants need to resubmit the new application. The way my clients got a copy of the RMA was I got it, another client, because the bank or SPS wouldn't allow them to download it from their site because their account was lost. I got the RMA once I realized we could be able to. Are you saying, I know this is outside the record, or it's outside the record, you're saying that your client couldn't have downloaded the form? Correct. Their account was lost, presumably because of litigation. That actually often happens. I know that's outside the record, but it's just a point in time. I got it once we realized we could be able to. It's in the district court. It seems like it could be important. But would she consider it because it's in the record? Is that right? You're asking me that? Yes. I don't believe that's in the record. Although some of the information about the bank's tendencies in these areas is in the record. I just frankly don't remember that that changed. I'm clearly not asking you about whether the bank is a bunch of bad people. I'm asking, as I asked before, doesn't the person living in the house just download the form from a website and up to now the answer's been yes? And now I find out from material that's not in the record that maybe the answer was no. But, gee, you've lost your opportunity to make your record. I don't understand why this is happening if the fact is that you're going to download a form. I think because the focus we had below was that the bank had the obligation to provide it, as they do in every single case we've ever been involved in. The bank is the one that creates the form. It's the one that has the requirements for what is required for the form. And the ambiguity in the settlement agreement came from the bank. They drafted that settlement agreement, and they relied on that ambiguity. What ambiguity? The ambiguity is who provides the ill-written copy of the RFA to the homeowner. From our position, it's obviously it has to be the bank. They're the ones who have the form. It must come from the bank. I don't think there's any dispute about that. The only question is, is it their obligation to find a way to get it to the bank, or is it the bank's obligation to simply hand it to me so I can hand it to her? And, Council, I think you're well over your time. Ms. Sarah? One of the things you should know, the House, Council is correct, the House has not been sold. The loan modification is still under review. All right. Thank you, Council. I hope you feel better. Corral versus Heskey has been submitted, and we will take up Reynolds versus Maryhill. Thank you.
judges: Kleinfeld, Wardlaw, Bencivengo